UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

JAMES E. CURRIE,

                    Petitioner,

            - against -

   HAROLD D. GRAHAM,

                   Respondent.

-------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

17-cv-1227 (BMC)

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from his state court conviction after a jury trial for one count of second degree murder, two counts of first degree robbery, one count of second degree robbery, and two counts of second degree weapons possession, for which he received concurrent sentences totaling 25 years to life. The facts are set forth below as necessary to address each of petitioner's points of error, but to summarize, petitioner and a co-defendant, Tyshaun Jacobs, broke into the apartment of a known drug dealer, Desmond Kelly. They robbed him and petitioner shot Kelly to death.

Petitioner has raised several points of error that he has exhausted in state court.[1] They are either not cognizable on federal habeas corpus, procedurally barred, or of insufficient merit to warrant relief under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. The petition is accordingly denied.

---

[1] Judge Azrack, to whom this case was previously assigned, stayed it pending exhaustion, which is now complete.

## I.    Illegal Arrest

A third-party witness observed petitioner and Jacobs fleeing from the scene of the crime. The witness gave a description to police, which included that the perpetrators were black and one of them had been wearing a red shirt.  A short time later, officers stopped petitioner, who was walking nearby with a woman and carrying a red shirt.  When they checked his identification, they found an open warrant from North Carolina for another homicide and arrested him.

On his direct appeal, petitioner contended that the police stopped him without probable cause.  The stop was illegal, he claimed, because the description of the assailants in the radio run did not sufficiently match him, and everything that flowed from that had to be suppressed.  The hearing court rejected his argument, and the Appellate Division affirmed on the merits:

> [T]he Supreme Court properly determined that the police had reasonable suspicion to stop and detain him based upon the contents of a police dispatcher's radio broadcast providing a general description of the perpetrator, the proximity of defendant to the site of the crime, and the short passage of the time between the commission of the crime and the observation of defendant.  Further, the police had probable cause to arrest defendant upon learning from a computer check that there was an open warrant for his arrest in North Carolina.

People v. Currie, 131 A.D.3d 1265, 16 N.Y.S.3d 866, 867 (2d Dep't 2015) (internal citations omitted), leave to appeal den., 26 N.Y.3d 1144, 32 N.Y.S.3d 58 (2016).

Petitioner's argument is not cognizable on federal habeas corpus review.  In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that federal habeas corpus review is unavailable for Fourth Amendment claims where the petitioner has had the opportunity to fully litigate the claim in state court: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Id. at 494.  The Supreme Court reasoned that, in the habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is

2

minimal, and the substantial societal costs of application of the rule persist with special force." Id. at 494-95.

Based on Stone, the Second Circuit has held that habeas review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations," or where there is a corrective procedure "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process . . . ." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc). Courts have repeatedly recognized that New York provides an adequate corrective procedure for Fourth Amendment claims. See, e.g., Capellan v. Riley, 975 F.2d 67 (2d Cir. 1992); Guzman v. Greene, 425 F. Supp. 2d 298 (E.D.N.Y. 2006); Crispino v. Allard, 378 F. Supp. 2d 393 (S.D.N.Y. 2005). For this reason, courts within this Circuit have almost uniformly held that challenges to a state court's rulings as to the application of the exclusionary rule are not reviewable under Stone. See, e.g., Marino v. Superintendent, Franklin Correctional Facility, No. 17-cv-1650, 2019 WL 1232088, at *4-5 (E.D.N.Y. March 15, 2019); Coleman v. Racette, No. 15-cv-4904, 2019 WL 948401, at *9-10 (S.D.N.Y. Feb. 2, 2019); Doll v. Chappius, No. 15-cv-6400, 2018 WL 6310191, at *9 (W.D.N.Y. Dec. 3, 2018); Wilson v. Graham, No. 17-cv-0863, 2018 WL 6001018, at *5-6 (N.D.N.Y. Nov. 15, 2018); Holley v. Cournoyer, No. 17-cv-587, 2018 WL 3862695, at *4-5 (D. Conn. Aug. 14, 2018); Ala v. Vermont, No. 10-cv-221, 2011 WL 1843045, at *4 (D. Vt. April 4, 2011).

Here, there is no question of the adequacy of the state law remedy. Petitioner fully litigated the Fourth Amendment issues through the hearing court and the Appellate Division. Under these circumstances, the state courts have provided petitioner a full and fair opportunity to raise his Fourth Amendment claim, and he has no right to federal habeas corpus review.

## II.     Self-Incrimination

### A.     <u>Miranda</u> Warnings

After his arrest, at the precinct house, Detective Carl Re, accompanied by a Detective Bob DiPietro, interviewed petitioner for less than 10 minutes without advising him of his <u>Miranda</u> rights.  During this interview, Det. Re elicited the following principal facts: (1) pedigree information; (2) that petitioner had left his house in Brooklyn that day around 10:00 a.m. to meet a girl as to whose name he was unsure; (3) that prior to coming to New York two weeks earlier, he had been living in North Carolina; and (4) that he had left North Carolina because he had "some trouble" there that he did not want to discuss.

After visiting the scene where Det. Re recovered certain incriminating evidence, Dets. Re and DiPietro returned to the precinct about an hour later.  Det. Re had petitioner brought to the detectives' floor, and questioned petitioner again in the company of Det. DiPietro.  Det. Re told petitioner that he wanted to speak to him about a shooting at an apartment house in the area.  Det. Re asked if he could take notes, and petitioner agreed.  At that point, Det. Re advised petitioner of his <u>Miranda</u> rights, reading from a form which petitioner signed.   Petitioner, although not confessing, then made a number of highly incriminating statements relating to the crime in response to Det. Re's questions.

The hearing court suppressed all of petitioner's statements prior to the <u>Miranda</u> warnings except the pedigree information and allowed all of the post-<u>Miranda</u> warning statements.  The Appellate Division affirmed, holding that:

> [T]he defendant's post-<u>Miranda</u> statements were not tainted by his earlier pre-<u>Miranda</u> statements, as the first interrogation was very brief, and the defendant made no inculpatory statements.  Moreover, the time differential of approximately one hour between the defendant's pre-<u>Miranda</u> statements and his post-<u>Miranda</u> inculpatory statements was sufficiently pronounced to dissipate the taint of the <u>Miranda</u> violation.

<u>Currie</u>, 131 A.D.3d at 1266, 16 N.Y.S.3d at 867 (internal citations omitted).

Because the Appellate Division decided this issue on the merits, my review of its decision is subject to the limitations of AEDPA. Section 2254(d)(1) of Title 28 permits reversal only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . ." <u>Ryan v. Gonzales</u>, 568 U.S. 57, 75 (2013) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 88 (2011) (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). Since <u>Harrington</u>, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations of constitutional issues. <u>See, e.g.</u>, <u>White v. Wheeler</u>, 136 S. Ct. 456, 460 (2015) (quoting <u>Burt v. Titlow</u>, 571 U.S. 12, 19 (2013) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before

state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'").

There are several Supreme Court cases that consider issues analogous to the one petitioner raises here.[2]  In <u>Elstad v. Oregon</u>, 470 U.S. 298, 318 (1985), the Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite <u>Miranda</u> warnings." The <u>Elstad</u> court distinguished its prior decision in <u>Westover v. U.S.</u>, 384 U.S. 436 (1966), as standing for the proposition that, "[w]hen a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession."  <u>Elstad</u>, 470 U.S. at 310.

In <u>Bobby v. Dixon</u>, 565 U.S. 23 (2011), the Court held that since the defendant had not incriminated himself during a non-custodial, pre-<u>Miranda</u> warnings encounter with the police, his inculpatory statements during the post-<u>Miranda</u> warnings part of the interview could be used. The Court distinguished its earlier plurality opinion in <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), which rejected as constitutionally deficient the so-called "two step interrogation technique," that is, getting a suspect to confess before warnings and then having him repeat the confession after the warnings.

There is nothing in the Appellate Division's decision that is contrary to or an unreasonable application of these Supreme Court cases.  Most significantly, the questions at the

---

[2] Petitioner cited none of these cases, and indeed no Supreme Court or federal cases, when his counsel raised this issue on direct appeal, nor has he done so in his habeas petition.  However, since the point heading on this issue in his brief on direct appeal asserted that his rights had been violated "under the federal and state constitutions," I will assume that he has exhausted this claim, because he "fairly presented" his federal claim to the state court, given its familiarity with the <u>Miranda</u> doctrine.  <u>Cf.</u> <u>Abdurrahman v. Henderson</u>, 897 F.2d 71, 73 (2d Cir. 1990); <u>Daye v. Attorney Gen. of State of N.Y.</u>, 696 F.2d 186, 192 (2d Cir. 1982).

first interrogation were benign and unrelated to the crime, and the second interrogation covered topics having little or nothing to do with the initial interview. In addition to the pedigree information elicited in the initial interview, which requires no Miranda warnings, see Pennsylvania v. Muniz, 496 U.S. 582, 601-02 (1990), all that Detective Re obtained was when petitioner had left his house that morning, and that petitioner had an undisclosed criminal problem in North Carolina. It was only after Det. Re had given Miranda warnings in the second interview that he asked about the shooting of Kelly in New York. That is a far cry from the situation in Seibert, where petitioner had already confessed during an initial interview and the post-Miranda interview merely reiterated it. This case is more akin to Bobby, where nothing incriminating or coercive happened in the first interview and thus the second interview was not tied to the first.

In addition, the initial questioning by Detective Re can hardly be called an "interrogation," as he mostly obtained pedigree information, and the state courts suppressed the little that went beyond that. Finally, it should be noted that not only were Det. Re's initial questions to petitioner unrelated to the crime at issue, but there was an hour gap between the first and second sessions, during which Det. Re visited the scene and obtained incriminating information which he then used in the second session to confront petitioner – after petitioner had received Miranda warnings.

Finding nothing in the Appellate Division's decision that is contrary to or an unreasonable application of Supreme Court authority, petitioner's claim that his statements during the second session should have been suppressed is rejected.

### B. Voluntariness

On direct appeal, petitioner asserted that his statements after he was Mirandized were coerced because of the circumstances under which he was held in custody prior to those

statements. According to the hearing transcript, those circumstances included: (1) he spent about 30 hours at the precinct; (2) most or all of that time, he was handcuffed to different pieces of furniture in different rooms; (3) whenever petitioner wanted water, the officers guarding him would bring him water; (4) he received bathroom breaks on request; (5) he was only questioned by the detectives as described above.[3]

The Appellate Division affirmed the hearing court's finding that petitioner voluntarily made the statements after receiving Miranda warnings, holding: "Based upon the totality of the circumstances, the defendant's post-Miranda statements were voluntarily made, and he voluntarily waived his Miranda rights prior to making the statements." Currie, 131 A.D.3d at 1266, 16 N.Y.S.3d at 867.

Under AEDPA, a habeas petitioner challenging the voluntariness of his statements to the police often faces a double hurdle. First, he must prove by clear and convincing evidence that the factual findings underlying the trial court's ruling were erroneous. 28 U.S.C. § 2254(e)(1). And those factual findings need not be express, for the Supreme Court has repeatedly held that a habeas court may apply the presumption of correctness to factual findings (including credibility determinations) that were not explicitly stated by the trial judge but could be inferred from his legal conclusion. See Marshall v. Lonberger, 459 U.S. 422 (1983) (trial judge's legal conclusion that defendant's guilty plea to a previous charge was admissible into evidence contained an implicit factual determination that defendant's testimony that he had not been given opportunity

---

[3] Petitioner also argued on direct appeal that according to the record, he was not given a place to sleep or food to eat. The hearing transcript does not permit these conclusions. As to being given food, one officer testified that while he was guarding petitioner, petitioner never asked for food, and the officer noted that when petitioner asked him for water, he gave him water. As to sleeping arrangements, I don't see anything in the hearing transcript about whether petitioner was given a separate place to sleep; no witness was asked. However, one of the pieces of furniture to which he was handcuffed appears to have been a bench, and there is certainly no suggestion in the hearing transcript that the police intentionally deprived petitioner of sleep or subjected him to interrogation that made sleep unlikely or impossible.

to review the indictment for the charged offense lacked credibility); LaVallee v. Delle Rose, 410 U.S. 690 (1973) (trial judge's legal conclusion that defendant's confessions to the police were voluntary and legally admissible in evidence contained an implicit factual determination that defendant's testimony that his confessions were the result of police coercion was not credible). The Supreme Court has repeatedly held that the determination of voluntariness requires consideration of the "totality of circumstances," limiting the ability of federal courts to second-guess the state courts' factual findings on habeas corpus review.  See Arizona v. Fulminante, 499 U.S. 279, 285-89 (1991); Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

Second, even with regard to the legal conclusion as to voluntariness, a petitioner must show that the state court's conclusion was not only erroneous, but contrary to or an unreasonable application of Supreme Court authority.  28 U.S.C. § 2254(d).  This is the AEDPA standard of deference described in the preceding sub-point.

This double burden is further increased in cases challenging the voluntariness of statements because the Supreme Court authority on the issue stands only for the broad proposition that a confession must be voluntary to be admissible.  Because AEDPA authorizes a federal court to grant relief only when a state court's application of federal law was unreasonable, it follows that "[t]he more general the rule" at issue – and thus the greater the potential for reasoned disagreement among fair-minded judges – the more leeway [state] courts have in reaching outcomes in case-by-case determinations."  Yarborough, 541 U. S. at 664.

Applying these principles to the instant case, there is no basis for me to find that the state courts' underlying factual determinations relevant to voluntariness were incorrect, nor that the legal finding that petitioner's statements were made voluntarily was contrary to or an unreasonable application of Supreme Court authority.  The most that can be said for petitioner's

argument is that he was in custody for more than a day before he made his self-incriminating statements. But that is not nearly enough to set aside the state courts' finding of voluntariness. Contrary to his argument in state court, there is no basis in the hearing record to find that he was deprived of food, water, sleep, or bathroom access. He was not subjected to prolonged or high-pressure interrogation techniques; both his pre-warning post warning conversations with Det. Re were very short. The statements at issue were only made after receipt of Miranda warnings.

Thus, the state courts' conclusion that petitioner's self-incriminating statements were voluntary survives AEDPA review, and his claim is rejected.

**III.    Improper Admission of 911 Call**

**A.    Background**

At petitioner's trial, the arresting officer testified over a hearsay objection that the radio call he first received described one of the perpetrators as having a red shirt and carrying a gun. The trial court held that the statement was not offered as for its truth, but to show why the police officer had stopped petitioner and approached him with guns drawn.

On direct appeal, petitioner contended in his represented brief that this was the only evidence that he, as opposed to his co-defendant, was the shooter, and that it was inadmissible as hearsay. His appellate counsel relied solely on New York law and did not cite to any federal decisions or the U.S. Constitution. But in addition, in his *pro se* brief, petitioner argued that admission of the testimony violated his rights under the Confrontation Clause of the U.S. Constitution. The Appellate Division held that the hearsay point was without merit, and the Confrontation Clause point was unpreserved for appellate review because petitioner had not raised that argument at trial, and, in any event, was also without merit. Currie, 131 A.D.3d at 1266, 16 N.Y.S.3d at 867-68.

**B.     Hearsay**

Petitioner has reasserted his hearsay argument in his habeas corpus petition.  However, his argument again faces the double-whammy of the narrow AEDPA review standard described above and the narrow standard of review of evidentiary rulings generally.  As to the latter, courts within the Second Circuit, consistent with Supreme Court authority, have repeatedly emphasized that "[e]rroneous [state court] evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus.  Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial."  Taylor v. Curry,  708 F.2d 886, 890-91 (2d Cir. 1983) (emphasis in original); accord Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors of state law.") (internal quotation marks and citation omitted); Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (per curiam).  Petitioner thus bears a "heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation."  Bonet v. McGinnis, 98-CV-6529, 2001 WL 849454, at *2 (S.D.N.Y. July 27, 2001) (internal quotation marks omitted); see also Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("We acknowledge . . . our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts."); Ayala v. Leonardo, 20 F.3d 83, 91 (2d Cir. 1994).[4]

---

[4] Given petitioner's *pro se* status, this point assumes *arguendo* that he actually raised a due process violation in the state courts.  The record is probably to the contrary.  As noted above, his argument to the Appellate Division was entirely based on state law with no reference to federal law.  If I did not review this as a federal constitutional claim, then it would be a non-cognizable state law claim.  Alternatively, I could review it as an unexhausted federal claim, but since there is no further opportunity to pursue it in state court, it would then be deemed exhausted and procedurally barred from review.  See Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000) (citing Coleman, 501 U.S. at 732) ("But when a claim is procedurally defaulted in state court by failure to abide by state procedural rules and no state remedies remain available to a defendant, his claim is deemed exhausted for purposes of a habeas application."); Reyes v. Keane, 118 F.3d 136, 139-40 (2d Cir. 1997).

As the trial court made clear, the officer's testimony was not offered to show the truth of the radio call, i.e., that petitioner was the shooter. The prosecution already had plenty of evidence of that – for example, gun powder residue on petitioner's dominant hand, and the blood of Kelly, the victim, all over his clothes, including on the red shirt that petitioner was carrying. Rather, the evidence was offered to show that the officer had not simply pulled a black male off the street, approached him with gun drawn, and frisked him. The officer had done those things because petitioner's race, red shirt, and proximity to the crime scene matched the radio call that had caused the officer to look for just such a person.

It was well within the trial court's discretion as a matter of New York evidentiary law to provide the jury with the entire chain of events, thus preventing speculation as to why the stop and the manner in which the frisk had been conducted had occurred. There is no nothing about this aspect of New York evidentiary law that constitutes a due process violation.

C.     **Confrontation Clause Claim**

The habeas corpus petition before me does not reassert the Confrontation Clause claim that petitioner raised on direct appeal in his *pro se* supplemental brief. But in light of his *pro se* status, I will assume that its omission was inadvertent and consider it as if asserted. Nevertheless, the Appellate Division's holding that the claim was procedurally barred precludes habeas corpus review in this Court.

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)) (emphasis omitted). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar

may constitute an adequate and independent ground for the state court's decision.  See, e.g., Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 193 (2d Cir. 2007).  State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state.  Murden, 497 F.3d at 193 (quoting Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)).

Further, if a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative.  See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis in original).

It is well settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review.  See, e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011).  New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2).  This rule has been interpreted by the New York courts to require, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error."  People v. Luperon, 85 N.Y.2d 71, 78,

623 N.Y.S.2d 735, 739 (1995); see also People v. Hicks, 6 N.Y.3d 737, 810 N.Y.S.2d 396 (2005).

New York law is also clear that an objection to an out-of-court statement on the ground that it is hearsay does not preserve an objection that the statement violates the Confrontation Clause of the Sixth Amendment. See Davis v. Lee, No. 13-cv-3827, 2015 WL 1379024, at *5 (S.D.N.Y. Mar. 25, 2015) ("[I]t is well-settled law in New York that the invocation of a hearsay objection is insufficient to preserve a Confrontation Clause violation.") (quoting Bryant v. Lempke, No. 08 Civ. 6103, 2010 WL 3063073, at *5 (W.D.N.Y. Aug. 2, 2010); People v.Kello, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111, 113 (2001); cf. United States v. Dukagjini, 326 F.3d 45, 60 (2d Cir. 2003) ("[A] defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers.") (quoting Daye v. Attorney Gen. of New York, 696 F.2d 186, 193 (2d Cir. 1982) (en banc)).

In the instant case, although trial counsel's objections were fervent and frequent, the only ground she mentioned was hearsay. The trial court was not on notice that petitioner also wanted it to analyze the subject evidence under the Confrontation Clause. The Appellate Division's ruling that the Confrontation Clause claim was unpreserved was thus fully consistent with both New York law and federal habeas corpus law.

Once it is determined that a claim is procedurally barred under state procedural rules, however, a federal court may still review such a claim on the merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. See

Coleman, 501 U.S. at 750; Harris, 489 U.S. at 262. The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that . . . the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray, 477 U.S. at 488) (alteration in original). However, the ineffective assistance claim must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). To adequately exhaust a claim, a petitioner must have "fairly presented" the claim to the state court. Daye, 696 F.2d at 191.

Although petitioner raised a claim for ineffective assistance of trial counsel in state court (discussed below), he never contended that his trial counsel was ineffective for failing to raise a Confrontation Clause claim. He therefore cannot rely on ineffective assistance of counsel to avoid the procedural bar. See Edwards, 529 U.S. at 451-52.

Nor is this a case of miscarriage of justice. The evidence was overwhelming by any definition. As noted above, petitioner had gunshot residue on his hand and the victim's blood on his clothes. But there was much more. Among other things, a police officer, John Fallace, had seen petitioner, wearing a red shirt, with his accomplice and to-be co-defendant, wearing an orange shirt, five minutes before the crime occurred. Fallace knew the co-defendant from prior encounters. Five minutes later, a neighbor called 911, reporting a disturbance next door, including yelling over money and a gun, and multiple gunshots.

The police arrived at the scene and found Kelly's body. Another witness told them he heard the shots and saw two black men exiting the building and fleeing in the opposite direction,

one of whom was wearing a red shirt and the other an orange shirt. At trial, this witness identified petitioner as the red-shirted man. Another witness who knew petitioner, Vashetta Lindsay, testified that she had been standing outside the victim's house, and when petitioner emerged running, he had dropped a gun in front her – which she picked up and was hot to the touch – and told her to "deal with it." Later that day, Lindsay testified, petitioner confessed to her that he had shot Kelly. She was with petitioner when the police arrested him, as described above, and petitioner went on to make the incriminating statements also referenced above.

Finally, it should be noted that the 911 call that officer repeated was non-testimonial, which would mean an absence of any Confrontation Clause issue at all. See Davis v. Washington, 126 U.S. 2266 (2006).

This verdict here was therefore not a miscarriage of justice. To the contrary, it was a manifestation of justice.

## IV.  Improper Remarks During Summation

Petitioner, in his represented brief on direct appeal, argued that the prosecutor had made himself a witness during closing argument and made other statements that deprived petitioner of a fair trial.[5] Since no objection to the closing statements had been raised at trial, the Appellate Division held that this claim was procedurally barred, and, in any event, without merit. That procedural bar is enforceable in this habeas corpus proceeding for the same reasons as petitioner's Confrontation Clause claim, discussed above. There is neither cause nor prejudice,

---

[5] Like his evidentiary argument discussed above, this point was argued solely as a matter of state law, with no reference to federal cases or the U.S. Constitution. To the extent petitioner is attempting to "constitutionalize" the point in his habeas corpus petition, it is deemed exhausted and procedurally barred for the same reason. See Spence, 219 F.3d at 170; Reyes, 118 F.3d at 139-40. But I assume that the point as raised in state court had a constitutional dimension in light of petitioner's *pro se* status.

as petitioner never challenged the effectiveness of his trial counsel for having failed to raise this issue. Nor is there any miscarriage of justice for the reasons set forth above.

## V.    False Testimony

In a motion under N.Y. C.P.L. § 440.10, petitioner sought to vacate his conviction on the ground that two police officers, arresting Officer P.O. Collins and Det. Re, had testified falsely at either his pretrial hearing or at trial. As to P.O. Collins, petitioner argued that that P.O. Collins had testified that he had stopped the defendant at 9:15 at night. However, according to petitioner, the "dispatch log" generated by the call dispatcher shows that the dispatch was entered at 9:36 p.m. Thus, petitioner argued that P.O. Collins must have testified falsely when he said that he stopped petitioner in response to the radio call since the stop occurred first.

As to Det. Re, petitioner claimed that in Det. Re's testimony, he pushed to a later point the time of petitioner's inculpatory statements so that it appeared <u>Miranda</u> warnings had been given prior. Petitioner deduced this from a "Serious Incident Time Log Work Sheet." In that document, Det. DiPietro, is shown as logging in at 2:03 a.m. But Det. Re had testified that Det. DiPietro was with him throughout the evening. Taking this rather complex theory one step further, petitioner concludes that he must have made his inculpatory statements prior to receiving <u>Miranda</u> warnings.[6]

Having posited these facts, petitioner asserts that they resulted in the violation of two of his constitutional rights: (1) the prosecutor must have known of the lies by P.O. Collins and Det. Re because she had the documents and heard the witnesses, and therefore deliberately permitted

---

[6] It is not clear from the record whether this Serious Incident Time Log Work Sheet was introduced into evidence at the hearing, although it is undisputed that it was produced to petitioner in discovery, and the document was mentioned during the trial testimony of P.O. John Fallace. If it was not in the record at the hearing, then the § 440 court erred in holding that petitioner's claim could have been raised based wholly on the record on direct appeal and was therefore procedurally barred, but as discussed below, even considering the evidence as a whole, petitioner is not entitled to habeas relief because the outcome was not contrary to or an unreasonable application of Supreme Court law.

false evidence in violation of petitioner's right to due process of law; (2) the efforts of petitioner's lawyer were constitutionally ineffective for not exploiting the inconsistencies at the hearing and trial.

Citing N.Y. C.P.L.R. § 440.10(2)(c), the § 440 court denied the motion as procedurally barred, holding that since all the documents and testimony upon which petitioner relied to show the alleged inconsistencies were part of the record on direct appeal, he had forfeited his right to raise those issues collaterally:

> Defendant possessed the Rosario material when he filed his direct appeal and he could have raised these issues in his direct appeal. However, defendant unjustifiably failed to raise the instant issues on his direct appeal thereby preventing an appellate review of his claims. Consequently, Defendant is procedurally barred from raising these claims in a 440 motion to vacate the judgment.

Since C.P.L. § 440.10(2)(c) is firmly established and regularly followed in the state's courts, see Beltran v. Keyser, No. 15-cv-7201, 2019 WL 22271360, at *14 (E.D.N.Y. May 28, 2019) (citing Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001); Davis v. Walsh, No. 08-CV-4659, 2015 WL 1809048, at *9-10 (E.D.N.Y. Apr. 21, 2015), the procedural bar must be recognized in this Court for the reasons described above.

However, in this instance, plaintiff has also exhausted a claim for ineffective assistance of appellate counsel. He brought a *coram nobis* motion in the Appellate Division arguing that his appellate counsel on direct appeal was ineffective for not raising these points. As noted above, ineffective assistance of counsel can constitute "cause" to relieve a petitioner from a procedural bar. The Appellate Division summarily rejected his ineffective assistance of appellate counsel claim. People v. Currie, 158 A.D.3d 775, 68 N.Y.S.3d 772 (2nd Dep't 2018) (mem.), leave to app. denied, 31 N.Y.3d 1146, 83 N.Y.S.3d 428 (2018) (table).

The standard for ineffective assistance of trial counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (1994), is also applicable to ineffective assistance of appellate counsel claims.  <u>See</u> <u>Smith v. Robbins,</u> 528 U.S. 259, 285 (2000).  To state a claim of ineffective assistance of appellate counsel, a petitioner must show (1) "that his counsel was objectively unreasonable in failing to find arguable issues to appeal" and (2) "a reasonable probability that, but for his counsel's unreasonable failure to" raise an issue on appeal "he would have prevailed on his appeal."  <u>Id.</u> (internal citations omitted).  "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court."  <u>Mayo v. Henderson</u>, 13 F.3d 528, 534 (2d Cir. 1994) (internal quotation marks and alternations omitted).

"In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."  <u>Clark v. Stinson</u>, 214 F.3d 315, 322 (2d Cir. 2000) (internal quotation marks and citations omitted).  Because one of the main functions of appellate counsel is to "winnow[] out weaker arguments on appeal," <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983), counsel is not required to present every nonfrivolous claim on behalf of a defendant appealing his or her conviction, <u>see</u> <u>Smith</u>, 528 U.S. at 288 ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.").

Moreover, because the Appellate Division decided this issue on the merits, and because there is a strong presumption under <u>Strickland</u> that counsel's assistance was effective, the standard of judicial review applicable to ineffective assistance of counsel claims under

§ 2254(d), which is explained above, is "doubly deferential." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).

Petitioner cannot meet either of the <u>Strickland</u> prongs, which on the facts here, merge together. They do that because petitioner simply misread the record. As the District Attorney explained to the § 440 court, the dispatch logs merely show the time that dispatcher made an entry in the log – not the time the call was put out. The recordings produced to petitioner show the 911 call coming in at 9:03 p.m. and the dispatch going out to P.O. Collins (and others) at 9:04 p.m., more than 10 minutes before P.O. Collins stopped petitioner. About 20 minutes later, the dispatcher entered the dispatch in the log.

Petitioner was simply confused as to the police's record keeping methods. Since petitioner's trial counsel had the time-stamped recordings showing the above sequence, there was nothing objectively unreasonable about his not raising a meritless point nor was petitioner prejudiced by the failure to raise it; it follows that there was nothing objectively unreasonable or prejudicial about appellate counsel not raising any claims based on this point either.

As to Det. DiPietro's 2:03 sign-in on the Serious Incident Signature Log, it is not clear why petitioner thinks that means that Det. Re must have lied about when petitioner made his incriminating statements. The theory seems to be that Det. Re lied in two respects. First, Det. Re testified that Det. DiPietro accompanied him to the crime scene prior to the re-confrontation with petitioner back at the precinct, and since petitioner's statements occurred at 1:20 p.m., Det. DiPietro would have had to sign the incident sheet prior to that. Thus, Det. Re was lying. Second, petitioner contends that since he made his inculpatory statements at 1:20 a.m., how could Det. DiPietro have not signed the serious incident sheet at 2:03 a.m.? Ergo, another lie.

There is no material contradiction between the documents. Nothing changes the fact that petitioner signed the <u>Miranda</u> waiver at 1:25 a.m. Petitioner cites nothing from police procedure requiring Det. DiPietro to have signed the "Serious Incident Log Work Sheet" any earlier than he did. Understandably, but ineffectively, petitioner was just grasping at straws.

The Appellate Division's conclusion that petitioner received effective assistance of appellate counsel was neither contrary to nor an unreasonable application of any Supreme Court authority.

## VI.   Insufficient Evidence

In his *pro se* brief on direct appeal, petitioner argued that the evidence was insufficient to sustain his conviction, especially for the robbery count. The Appellate Division did not address this argument, nor did it include a general disposition of unaddressed arguments. I will, however, presume that the Appellate Division reviewed petitioner's argument on the merits, and apply AEDPA deference to the outcome, because there is no suggestion here that the Appellate Division merely overlooked this claim or that the presumption should otherwise be rebutted. <u>See Johnson v. Williams</u>, 568 U.S. 289, 301-303 (2013).

As noted above, there was an abundance of evidence upon which the jury could base its verdict for all of the counts:

- A witness testified that as petitioner's accomplice Jacobs ran in front of him, the witness saw Jacobs carrying a shoe box with cash and bags of marijuana;
- Petitioner's "dog tags" were found in bushes near the victim's home;
- The woman accompanying petitioner when he was arrested testified that he had dropped a gun at her feet, which was hot, as he ran past her and said "deal with this;"
- Petitioner was arrested with blood stained clothing that matched the victim's DNA;

- Petitioner's statements to Det. Re included that if "the dude's blood is on my shirt . . . I'm guilty" and that the crime was "not even for money . . . for weed, for weed."

- Petitioner had gun powder residue on his hands.

No reasonable jurist could say that a decision that this evidence was sufficient under the Constitution to sustain petitioner's convictions for murder, robbery, and illegal weapons possession is contrary to, or unreasonable application of, Supreme Court authority.[7]

## CONCLUSION

The petition is denied, and the case is dismissed. Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
        June 12, 2019

---

[7] Because there is no last related state-court decision that provides a relevant rationale for the Appellate Division's decision, I cannot apply the "look through" approach articulated by the Supreme Court in Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).